**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| JOHN FOREST THOMER II, | : | Case No. 1:13-cv-340 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| CITY OF CINCINNATI, *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT CITY OF CINCINNATI'S MOTION TO DISMISS (Doc. 5)**

This civil action is before the Court on Defendant City of Cincinnati's Motion to Dismiss (Doc. 5) and the parties' responsive memoranda. (Docs. 8, 10).

Plaintiff's Complaint brings state law and 42 U.S.C. § 1983 claims for false arrest and malicious prosecution against the City of Cincinnati and police officers Daniel Kreider and Ron Hugley based on Plaintiff's 2012 arrest and ensuing prosecution for disorderly conduct. (Doc. 1).

Defendant City of Cincinnati now moves to dismiss the City from this suit on the basis that Plaintiff has failed to sufficiently allege facts that state any claim upon which relief can be granted against the City. (Doc. 5 at 5).

### I.     FACTS <u>AS ALLEGED BY THE PLAINTIFF</u>

For purposes of this motion to dismiss, the Court must: (1) view the claims in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true.

*Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009). All facts recited below are drawn from Plaintiff's Complaint. (Doc. 1 at ¶¶ 7-52).

On May 23, 2012, Plaintiff attended the Party in the Park ("Party") at Yeatman's Cove ("Park") in Cincinnati, Ohio. The Party is a privately sponsored event that operates under a special event permit issued by the City.

Plaintiff attended the Party with his friend, Allison Bruener. Bruener suffers from muscular dystrophy and uses a wheelchair. Bruener is a comedian. Plaintiff attended the Party on May 23, 2012 to promote Bruener and her material. Plaintiff approached several people at the event, pointed to Bruener, and asked if the people would "like to laugh at the crippled girl." Plaintiff videotaped some of these conversations with a handheld camera. During some of the conversations, Plaintiff asked the people he approached to say, "I laughed at the crippled girl" on camera. Many agreed to say the line on camera, but one individual complained about Plaintiff to two police officers. The two officers were off duty and working a special event detail at the Party.

The officers observed Plaintiff for a few minutes and saw him approach others to speak about Bruener. The two officers then approached Plaintiff. Defendant Kreider told Plaintiff he needed to leave the park. Plaintiff responded by asking why he needed to leave. The officers did not tell Plaintiff why they were asking him to leave the Park. Plaintiff attempted to film the encounter using the camera he was holding. The officers told him it was "disrespectful" to film the police. Defendant Kreider again told Plaintiff he needed to leave the Park. Plaintiff again asked why. The officers never told him why

he was being made to leave the Park.

Without any explanation, the officers grabbed Plaintiff. Defendant Hugley pulled the camera out of Plaintiff's hands, breaking the camera strap in the process. The officers pulled Plaintiff's hands behind his back and handcuffed him. During this process, the officers threatened to deploy a taser against Plaintiff. The officers placed Plaintiff under arrest.

An on duty police officer was called to the scene to transport Plaintiff to jail. The officers removed the handcuffed Plaintiff from the Park and took him to the parking lot adjacent to the Park to be put in a squad car. After Plaintiff arrived at the parking lot, he told the officers that he was Bruener's only ride home. Defendant Kreider then wrote Plaintiff a citation for violating Ohio Rev. Code § 2917.11, Disorderly Conduct. The citation stated that Plaintiff "did recklessly cause alarm and annoyance to others by making grossly abusive language." The officers gave Plaintiff the citation and released him near Butler Street, in the parking lot adjacent to the Park.

Defendant Kreider filed a criminal complaint against Plaintiff by. The complaint stated that Plaintiff "did recklessly cause annoyance to another by making unreasonable noise," a violation of Ohio Rev. Code § 2917.11(A)(2). The complaint further stated that it was based on "John Thomer walking into people and shouting obscenities at them. John Thomer was asked to stop his behavior but persisted in yelling and shouting causing annoyance and alarm to others."

Plaintiff requested a Bill of Particulars from the City to clarify the charges against

3

him.  The City responded with a Bill of Particulars again stating that Plaintiff had shouted obscenities and walked into people.  The only specific example given by the City of the conduct that led to a charge was that Plaintiff allegedly "stat[ed] to a witness that his girlfriend was a porn star and if you jump on she will give you the ride of your life."

Plaintiff moved to dismiss, arguing that the alleged statement was protected by the First Amendment.  The City responded by saying that Plaintiff "was not charged with violating Ohio Rev. Code § 2917.11(A)(2) for the content of his speech, but for his conduct."  The City stated that the charge against Plaintiff "solely involves the volume of the speaker's voice."  Plaintiff withdrew his motion to dismiss upon assurances that he was not being charged for the content of his speech, but for the volume of his voice under Ohio Rev. Code § 2917.11(A)(2).  A trial was scheduled for October 22, 2012.  The trial was delayed until October 29, 2012 because the City again changed the charge to a violation of Ohio Rev. Code § 2917.11(A)(1), which prohibits individuals from recklessly causing inconvenience, annoyance, or alarm to another by "engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."

Plaintiff was tried before a jury on October 29, 2012.  After a four-day trial, the jury acquitted Plaintiff of the sole charge of violating Ohio Rev. Code § 2917.11(A)(1), Disorderly Conduct.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a

4

claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and the Complaint shall be dismissed. *Id*. (citing Fed. R. Civ. P. 8(a)(2)).

### III.  ANALYSIS

**A.  Federal Law Claims**

Plaintiff brings 42 U.S.C. § 1983 claims alleging that his constitutional rights were violated through his false arrest (Count I), his malicious prosecution (Count III), and the City's inadequate policies and procedures and failure to adequately train its police officers and prosecuting attorneys (Count V).  (Doc. 1 at 8-10).

**1.  Counts I and III**

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

Before 1978, cities were not liable under § 1983 because they were not considered persons. *Monroe v. Pape*, 365 U.S. 167, 192 (1961).  In *Monell v. New York City Dept. Soc. Servs.*, 436 U.S. 658, 690 (1978), the Supreme Court concluded "that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies."  After reaching that conclusion, however, the Court rejected the idea that a city could be liable simply because it employed a wrongdoer.  *Id.* at 691. Instead, it determined that a municipality can be liable under § 1983 only when the execution of a government policy or custom inflicts injury.  *Id.* at 694-95.

Count I (false arrest under § 1983) and Count III (malicious prosecution under § 1983) make no claims related to the actions of the City itself and therefore seek to impose *respondeat superior* liability on the City. However, as established above, *respondeat superior* liability for § 1983 violations is not permitted under *Monell*.

Consequently, Counts I and III are appropriately dismissed as to Defendant City of Cincinnati.

### 2. Count V

There are "at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). The plaintiff may use: (1) legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) inadequate training or supervision; and (4) a custom of tolerance or acquiescence of civil rights violations. *Id.*

The U.S. Supreme Court also noted in *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), that municipalities can be held liable for failing to adequately train for situations that are likely to occur and have a high potential for constitutional violations. The Court noted that "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* This was explicitly noted as an additional means of demonstrating liability based on failure to train. *Id.* at 390 n.10.

Moreover, recorded acts such as "legislative enactments or official agency policies" are not necessary to establish an unconstitutional policy. Unofficial policies or practices may become so widespread that they constitute an "official" policy for purposes of a § 1983 claim. *McClendon v. City of Detroit*, 255 Fed. Appx. 980, 982 (6th Cir. 2007), quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). Section 1983 also "authorizes suit 'for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.'" *Id.* A plaintiff might not be able to show a written policy, but "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.*

Count V alleges that the City "failed to adequately train or supervise the Officers regarding individuals' Constitutional rights to engage in free speech in public forums and their responsibilities when performing off-duty special event details." (Doc. 1 at ¶ 72). The need for Cincinnati police officers to distinguish legitimate free speech from disorderly conduct is obvious. The inadequacy of that training is very likely to result in the violation of constitutional rights. Count V also alleges that the City failed to adequately train or supervise the City's lawyers, and that the City has a policy of failing to dismiss charges when they are unconstitutional and unsupported by the facts of the case. (*Id.* at ¶ 73). The need for the City to properly train and supervise its attorneys regarding the probable cause requirement in criminal prosecutions is obvious, and the inadequacy of

that training is very likely to result in constitutional violations.  Furthermore, Plaintiff alleges that the City was on notice on at least three occasions that the charges it was pursuing against Plaintiff were not supported by the facts.  In each instance, Plaintiff alleges that City officials, with final decision-making authority, made a conscious decision to continue with the prosecution despite being aware of the lack of probable cause. Plaintiff alleges that the City changed the charges multiple times, including just days before trial, lending further credence to the claim that the City's actions are symptomatic of widespread unconstitutional practices with regard to arrests and prosecutions.  At this early stage, Plaintiff has met his relatively low burden of pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

For these reasons, Count V states a plausible 42 U.S.C. § 1983 claim based on the City's alleged failure to properly train or supervise its employees and/or its alleged unconstitutional policies and procedures.

**B.    State Law Claims**

Political subdivisions are immune from suit under Ohio law for injuries caused in the course of governmental functions.  Ohio Rev. Code § 2744.02(A)(1).[1]  Ohio Rev. Code § 2744.03(A)(3) further provides:

---

[1] There are five exceptions to governmental immunity. Ohio Rev. Code § 2744.02(B)(1)-(5). It is undisputed that none of the exceptions apply in this case.

9

> The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to . . . enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

Here, Plaintiff does not dispute that the relevant police officers and prosecutors perform government functions or that the actions in question were within their enforcement discretion.  Consequently, the City is immune to suit for these injuries under state law.

Plaintiff does not object to the dismissal of Count II, his state law false arrest claim, as against the City, as long as "the state law claim for false arrest remains against the two Officers and the City fulfills its duty to defend and indemnify the officers[.]"  (Doc. 8 at 6).  The City has confirmed that it "intends to defend and indemnify the officers with respect to the state law false arrest claims."  (Doc. 10 at 6).

With respect to Count IV, Plaintiff's state law malicious prosecution claim, Plaintiff states that this claim "should be construed as a claim against the official within the City administration who made the decision to continue prosecuting [Plaintiff] even after it became apparent there was no probable cause to support the charges" and that Plaintiff "should be permitted to amend his Complaint to name that City official[.]"  The Court therefore construes this as a motion to amend the Complaint and concludes that such a motion is properly granted.

Based on the foregoing, Counts II and IV are also appropriately dismissed as to Defendant City of Cincinnati, but Plaintiff will be permitted to amend the Complaint to bring his malicious prosecution claim against a proper defendant.

10

## IV. CONCLUSION

Accordingly, based on the foregoing, Defendant's Motion to Dismiss (Doc. 5) is hereby **GRANTED IN PART AND DENIED IN PART**. Specifically:

1. Defendant's Motion to Dismiss Counts I, II, III, and IV is **GRANTED** as to Defendant City of Cincinnati;

2. Defendant's Motion to Dismiss Count V is **DENIED**; and

3. Plaintiff is **GRANTED** leave to amend the Complaint to bring his state law malicious prosecution claim against a proper defendant within 21 days of the date of this Order.

   **IT IS SO ORDERED.**

Date: 11/22/13                                                             */s/ Timothy S. Black*
                                                                           Timothy S. Black
                                                                           United States District Judge